UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

LESTER Z.,[1]

        Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 2:20-CV-01659-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Lester Z. seeks judicial review of the final decision by the Social Security
Commissioner ("Commissioner") denying his applications for Disability Insurance Benefits
("DIB") under Title II of the Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income
("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.  This court has jurisdiction to
review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  For the reasons set forth
below, that decision AFFIRMED.

    Plaintiff protectively filed for DIB and SSI on March 18, 2014, alleging disability
beginning on March 1, 2006.  Tr. 28.  His applications were initially denied on September 4,

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of his last
name.

2014, and upon reconsideration on January 13, 2015. *Id*. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on March 9, 2016. At that hearing, plaintiff and an impartial medical expert, Miriam Sherman, M.D., testified. A second hearing was conducted on May 19, 2016, at which a vocational expert testified. The ALJ issued a decision on June 28, 2016, finding plaintiff not disabled within the meaning of the Act. Tr. 10-24.

On April 22, 2019, the United States District Court for the Eastern District of Washington remanded the case for further proceedings due to the ALJ's "erroneous analysis of the alcohol and drug use issue, and corresponding erroneous approach to the medical evidence." Tr. 742; *Lester Z. v. Commissioner of Social Security*, 2019 WL 7819479 (E.D. Wa. April 22, 2019). The court declined to award benefits because it "[did] not find that the record as a whole compels a finding that Plaintiff is disabled." Tr. 742. The court noted that, "[t]o the contrary, evidence in the administrative record suggests that Plaintiff may not be disabled." *Id*.

On remand, another hearing was held on May 12, 2020. Tr. 667-98. At that hearing, plaintiff amended the alleged onset date to January 1, 2014.[2] Tr. 639; Tr. 677-78. This resulted in a withdrawal of plaintiff's Title II application. Nevertheless, the ALJ considered "all relevant time periods related to both applications." Tr. 639. A vocational expert also testified at the 2020 hearing. Tr. 694.

The ALJ issued a decision on June 12, 2020, again finding plaintiff not disabled. Tr. 639-54. The Appeals Council denied plaintiff's request for review on February 24, 2020. Tr. 1-

---

[2] The ALJ and the parties refer to January 24, 2014, as the amended onset date. Pl. Br. 2; Def. Br. 4. However, the hearing transcript indicates that plaintiff amended the onset date to January 1, 2014. Tr. 677-78.

3.  Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court.  20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1035.  This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. § 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since March 1, 2006, the alleged onset date.  Tr. 642.  At step two, the ALJ determined plaintiff suffered from the following severe impairments: attention deficit hyperactivity disorder (ADHD), anxiety disorder, panic disorder, depression, and alcohol abuse.  *Id.*  The ALJ recognized other impairments in the record, but concluded these conditions were non-severe.  *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 643.

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined plaintiff can perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand and remember simple instructions; has sufficient concentration, persistence, and pace to complete simple, routine tasks in two-hour increments for a normal workday and workweek; is able to tolerate routine, superficial interactions with the general public and a small group of coworkers; is able to accept supervision delivered in a normative fashion (i.e., a calm and measured fashion); and can adapt to a routine work setting and should avoid normal hazards in the workplace.  Tr. 646.

At step four, the ALJ found plaintiff is capable of performing past relevant work as a janitor.  Tr. 656.  Thus, the ALJ concluded plaintiff was not disabled.  *Id.*

## DISCUSSION

Plaintiff contends the ALJ erred by improperly discounting the medical opinion evidence of his treating doctors Ray Fitzsimmons, M.D., and Christopher Fashion, M.D., and the evaluating psychiatrist Daniel McCabe, M.D.  He also asserts the ALJ erred in rejecting his subjective symptom testimony.

## I.    Medical Opinion Testimony

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.[3]  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

"Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record."  *Id*. (treating physician) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). "Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record."  *Orn*, 495 F.3d at 632 (quoting *Reddick*, 157 F.3d at 725); *Widmark*, 454 F.3d at 1066.

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Id.*

---

[3] Under the new regulations, effective for claims filed on or after March 27, 2016, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive."  20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).  However, these regulations do not apply to this case because plaintiff filed his application for benefits in 2014.

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (citation and internal quotation marks omitted). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Here, the medical opinions of the treating and evaluating doctors were contradicted. *See* Tr. 113-58. Therefore, the court considers whether the ALJ provided specific and legitimate reasons supported by substantial evidence in the record to reject them.

### A.    Dr. Ray Fitzsimmons, M.D.

The ALJ observed that treating physician Dr. Fitzsimmons completed a Physical Functional Evaluation form in January 2014 in which he "concluded that [plaintiff] had no significant physical disorder, but his anxiety and panic disorder interfered significantly with his ability to work and hold gainful employment," and "[plaintiff] was unable to function because of anxiety disorder." Tr. 654 (citing Tr. 348-50, 556-58). The ALJ concluded that Dr. Fitzsimmons' "opinion is not given weight" for four reasons. *Id.*

First, the ALJ found that Dr. Fitzsimmons "was supposed to perform a physical assessment; he was not the claimant's psychiatrist." Tr. 654. Indeed, Dr. Fitzsimmons completed a physical, rather than a mental, functional evaluation form. Tr. 348-50. *Compare* Tr. 356 (Mental Functional Assessment completed by Melanie Mitchell, PsyD, addressing plaintiff's ability to understand, remember, perform activities, learn new tasks, etc.). Therefore, it is not surprising the ALJ remarked that Dr. Fitzsimmons was "supposed to perform a physical

assessment." Tr. 654.  However, to the extent the ALJ found Dr. Fitzsimmons was not qualified

to opine about plaintiff's mental health because he was not a psychiatrist, that was error.  As a

medical doctor, Dr. Fitzsimmons was qualified to provide an opinion regarding plaintiff's mental

health.  *See Trnavsky v. Colvin*, 636 F. App'x 390, 392 (9th Cir. 2016) (finding "an M.D. was

qualified to opine on [the plaintiff's] mental health", even though the doctor provided primarily

physical treatment) (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (recognizing

"it is well established that primary care physicians (those in family or general practice) identify

and treat the majority of Americans' psychiatric disorders").

　　　　Nevertheless, the ALJ did not err in the second reason she provided for rejecting Dr.

Fitzsimmons' opinion—that "the opinion contains no specific information regarding functional

abilities or limitations, and lacks probative value in assessing the residual functional capacity."

Tr. 654.  An ALJ is required to "rate the degree of functional limitation resulting" from a mental

impairment.  C.F.R. § 404.1520a(b)(2).  "Assessment of functional limitations is a complex and

highly individualized process that requires [the ALJ] to consider multiple issues and all relevant

evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional

limitation."  C.F.R. § 404.1520a(c)(1).  The ALJ will "rate the degree of [a claimant's]

functional limitation based on the extent to which [the claimant's] impairment(s) interferes with

[the claimant's] ability to function independently, appropriately, effectively, and on a sustained

basis."  C.F.R. § 404.1520a(c)(2).  "Thus, [ALJs] will consider such factors as the quality and

level of [the claimant's] overall functional performance, any episodic limitations, the amount of

supervision or assistance [the claimant] require[s], and the settings in which [the claimant is]

able to function."  *Id.*  There are "four broad functional areas in which [ALJs] will rate the

degree of [a claimant's] functional limitation: Understand, remember, or apply information;

interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." C.F.R. § 404.1520a(c)(3). The ALJ will "rate [the claimant's] degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), . . . us[ing] the following five-point scale: None, mild, moderate, marked, and extreme." C.F.R. § 404.1520a(c)(4). "The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.*

On the Physical Functional Evaluation Form, Dr. Fitzsimmons indicated only that plaintiff's panic and anxiety disorder was "marked" and "interferes significantly with his ability to work" and "hold gainful employment," and he is "unable to function because of anxiety disorder." Tr. 348-50. He did not address or rate any mental functional limitations in detail, including plaintiff's ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." C.F.R. § 404.1520a(c)(3). Dr. Fitzsimmons' failure to address plaintiff's functional limitations was a specific and legitimate reason to reject the doctor's opinion, especially given the regulations explicitly require an ALJ to rate the claimant's degree of limitations in particular areas.

As a third reason, the ALJ found that the January 22, 2014 "treatment note related to the visit during which the form was completed does not contain any significant examination findings, rather, Dr. Fitzsimmons noted that [plaintiff] was fully oriented with intact memory and normal judgment." Tr. 654 (citing Tr. 559-61). Plaintiff argues that Dr. Fitzsimmons was not assessing his "functioning during that specific appointment, but rather anticipating how hi[s] impairments would affect his ability to perform full-time work." Pl. Br. 6. Indeed, the isolated treatment note cited by the ALJ does not reflect Dr. Fitzsimmons' opinion, which was based on

plaintiff's treatment over a longer period of time. *See Garrison*, 759 F.3d at 1013-14; *Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). Nevertheless, the ALJ otherwise gave at least one valid reason for discounting Dr. Fitzsimmons' opinion; therefore, any error was harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

Finally, the ALJ found "this statement is conclusory and speaks to an issue that is expressly reserved to the Commissioner." Tr. 654. Dr. Fitzsimmons' opinion is definitely conclusory, as it is lacking details about plaintiff's functional limitations. *Chaudhry*, 688 F.3d at 671. It is unclear how Dr. Fitzsimmons' opinion "speaks to an issue that is expressly reserved to the Commissioner." But, again, if there is error, it is harmless because the ALJ provided at least one specific and legitimate reason, supported by substantial evidence, to reject Dr. Fitzsimmons' opinion. *Molina*, 674 F.3d at 1115.

## B.    Dr. Daniel McCabe, M.D.

Consultative physician Dr. McCabe conducted his first psychiatric evaluation of plaintiff on February 20, 2014. Tr. 551. Dr. McCabe found plaintiff had marked limitations in adapting to changes in a routine work setting, and moderate limitations in the areas of (1) communicating and performing effectively in a work setting, (2) maintaining appropriate behavior in a work setting, (3) setting realistic goals and planning independently, and (4) performing activities within a schedule, maintaining regular attendance, and being punctual without supervision. Tr. 553. Dr. McCabe found plaintiff had mild or no limitations in other areas, including understanding, remembering, and persisting in tasks by following short and simple instructions. *Id*.

The ALJ gave "some weight" to Dr. McCabe's opinion "as to interacting with others and setting realistic goals," but observed that "the residual functional capacity assessment for limited interpersonal contact and for simple routine tasks in a routine setting accounts for such limits." Tr. 653.  The ALJ found "the remainder of limitations are not given weight for several reasons." *Id.*

First, the ALJ found that Dr. McCabe "did not provide sufficient explanation or support for the limitations, and they are not consistent with the generally unremarkable mental status examination findings, which suggests that they were based largely on the claimant's subjective reports."  Tr. 653.  The ALJ found that "[n]otably, [the] mental status examination was unremarkable aside from difficulties completing a three-step task, which is not sufficient to support the extent of the limitations assessed."  Tr. 653-54; *see* Tr. 555.

Plaintiff argues that where medical sources discuss their own "observations, diagnoses, and prescriptions" in addition to the individual's self-reports, the ALJ errs by rejecting the opinion as "more heavily based on [the] patient's self report than on clinical observations."  Pl. Br. 8 (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)).  But, here, the ALJ specifically relied upon plaintiff's "unremarkable" mental status examination to discount Dr. McCabe's opinion.  Dr. McCabe's mental status examination indicated that, "[d]espite his severe anxiety," plaintiff "displayed no anxiety being . . . in this office talking to me."  Tr. 555.  Plaintiff's grooming was appropriate, his eye contact was good, his speech was normal in rate and tone, he was pleasant and cooperative, his mood was good, and his affect was full.  *Id.* Further, plaintiff presented without delusions or hallucinations, his perception, memory, fund of knowledge, and abstract thinking were within normal limits, and his judgment was good, although his insight was poor and he was not oriented to the date.  *Id.*  When plaintiff's

concentration was tested, he was able to do a "serial-7 subtraction 5/5," and on a three step command, he performed two out of three correctly.  *Id.*  Thus, substantial evidence supports the ALJ finding that plaintiff's "mental status examination was unremarkable aside from difficulties completing a three-step task."  Tr. 653-54. This was a specific and legitimate reason to discount Dr. McCabe's opinion.  *See Shannon R. v. Comm'r of Soc. Sec.*, No. C21-5173-MLP, 2021 WL 5371394, at *4 (W.D. Wash. Nov. 18, 2021) (upholding ALJ's decision to discount opinions based on their inconsistency with the normal mental status examinations in the record).

The ALJ also considered a second evaluation that Dr. McCabe performed on December 23, 2015.  Tr. 654; *see* Tr. 542-45.  In this evaluation, Dr. McCabe noted that plaintiff's thought process and content, orientation, perception, memory, fund of knowledge, and abstract thought were all within normal limits.  Tr. 545.  Dr. McCabe found more marked limitations in the areas of communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, and completing a normal work day and work week without interruptions from psychologically-based symptoms.  Tr. 544.

The ALJ gave this opinion little weight, stating:

> Again, the limitations assessed are not consistent with the mental status examination findings that again noted normal memory, abstract thought, and an ability to perform serial subtractions and making an error on one step of a three-step task. In addition, the claimant was again pleasant and appropriate with good mood and full affect, and there was no indication of anxiety or panic.

Tr. 654.  The ALJ also discounted Dr. McCabe's opinion because "the record does not establish a worsening of [plaintiff's] condition since the prior evaluation" and treatment records did not document the panic plaintiff described to Dr. McCabe.  *Id.*  As discussed below, the ALJ's conclusions are supported by the record, in particular the treatment records by Dr. Rae Wisler,

M.D., and Dr. Christopher Faison, M.D., whom plaintiff saw between February 2014 and December 2015.

On March 10, 2014, plaintiff reported to Dr. Wisler that he was exercising one to three times a day with weights and cardio. Tr. 530. He was engaged to a woman from San Jose. Plaintiff was "giddy, loud," and displayed his usual rapid speech. *Id.* He was taking Lunesta for sleep, which was "wonderful." *Id.*

On June 26, 2014, plaintiff reported to Dr. Wisler that his depression was better and he had less anxiety. Tr. 529. He came to the appointment with his girlfriend, and shared that they "like being together" and she "makes me calm." *Id.*

On September 25, 2014, Dr. Wisler wrote somewhat equivocally that plaintiff "[i]ndicates (I think) that anxiety is significant issue, not managed with meds." Tr. 524. Plaintiff described that he was sleeping well, and that walking and jogging helps "calm me down." *Id.* He also described that weightlifting helped and he "got more calming from that than walking." *Id.*

A December 16, 2014 chart note by Dr. Wisler describes that during their discussion about anxiety, plaintiff "repeats the same generalizations and non specifics" and repeatedly claimed he was disabled. Tr. 525. However, Dr. Wisler noted that plaintiff "can't ever seem to imagine what his behavior might look like from the outside." *Id.* For instance, Dr. Wisler wrote that plaintiff "insists . . . he has 'fear of dying'" but when highly anxious, there are no thoughts such as 'oh no – I think I'm dying!" *Id.* (emphasis in original).

On March 17, 2015, plaintiff reported to Dr. Wisler that he was feeling better physically. Tr. 527. He had been to the cardiologist and was following recommendations regarding diet and exercise. He was sleeping better, had less body aches, and his "nerves [were] better." *Id.* Dr.

Wisler noted that plaintiff was "easier to talk with," he left spaces for Dr. Wisler to speak, and his statements were "not too tangential." *Id*. On July 10, 2015, plaintiff continued to report that exercise helped with his anxiety and disorientation. Tr. 526. He reported no complaints about sleep. Tr. 539.

On July 10, 2015, Dr. Wisler's chart note states, "Saw Lester today – all seems well psychiatrically – good job!" Tr. 538.

Finally, on October 7, 2015, plaintiff arrived at his appointment with his "whole family." Tr. 526. Plaintiff was wearing a wool suit and tie, and Dr. Wisler observed that plaintiff "acts like he's very eager to get his agenda fulfilled." *Id.* Plaintiff explained that he had begun his social security application. *Id.* Plaintiff proposed to trade his clonazepam for diazepam at exercise time, explaining he only needed a tranquilizer before exercise because of his fear of elevated heartrate, although he reported that once he started exercising, "I'm no longer afraid." *Id.*

Dr. Wisler thereafter wrote to Dr. Faison[4] that plaintiff's request to trade his clonazepam for diazepam was "a recipe for disaster." Tr. 537. Dr. Wisler also observed that plaintiff's "fear of death from his increased heart rate" went away while he was exercising, which Dr. Wisler attributed to a surge of endorphins. *Id.* Dr. Wisler opined that, as a result of exercise, plaintiff "benefit[ed] from improved focus and sleep and reduced generalized anxiety." *Id.* Dr. Wisler told plaintiff that his three hours of play boxing and calisthenics/weights was neither "healthful or sustainable," but noted that plaintiff "won't hear of it, of course." *Id.*

---

[4] Dr. Faison began treating plaintiff in February 2015, following Dr. Fitzsimmons' retirement. Tr. 597.

Dr. Faison's treatment notes tell a similar story.  On April 28, 2015, Dr. Faison observed that plaintiff was "overall doing well, losing weight, more active."  Tr. 594.  Dr. Faison also observed "some improvement" in anxiety with "increased exercise," and was "encouraged on this front."  Tr. 595.  Dr. Faison noted that weaning plaintiff from clonazepam was appropriate long term as plaintiff was "likely not getting large benefit."  *Id.*

On July 28, 2015, Dr. Faison wrote that plaintiff was "doing great with activity and working with diet," Tr. 591, and that his anxiety disorder was improved with increased exercise. Tr. 592.  On August 8, 2015, Dr. Faison confirmed, as Dr. Wisler had noted, that plaintiff saw "great improvement" with his insomnia by using Ambien.  Tr. 586-87.  He reported "it is working the best of any medication he has used."  Tr. 586.  Also, again, exercising regularly was "helping" the anxiety.  Tr. 587.

Plaintiff saw Dr. Faison on October 9, 2015, to discuss switching from clonazepam to diazepam to help with some of his anxiety about lung function and death during exercise.  Tr. 577-78.  Again, Dr. Faison noted that plaintiff was "doing well" with increased physical activity. Tr. 578.  Dr. Faison also noted that, in the long term, he wanted to continue to simplify plaintiff's medication regimen while encouraging a healthy lifestyle.  *Id.*

On October 23, 2015, Dr. Faison observed that plaintiff's anxiety was "well controlled" and he was "doing well" on a low dose of buspirone without negative side effects.  Tr. 574. Plaintiff had stopped taking clonazepam and was taking diazepam before exercising.  *Id.* Plaintiff's exercise was "strenuous" and he had been doing "even more."  *Id.*  Dr. Faison noted "improving [symptoms] with activity" and indicated that the next steps were to step down plaintiff's ADHD medication, which was "certainly" making his anxiety worse.  Tr. 575.

In his November 23, 2015 chart note, Dr. Faison indicated that plaintiff reported he was exercising twice daily for approximately five hours a day, and thought exercise was working for him.  Tr. 571.  His heart rate was down in the 70s and his blood pressure was better—"This is the best it has been in a decade.  Things are looking up." *Id.*  Although plaintiff claimed his medications were not working properly and his brain was "all fouled up," he said his Adderall dosage was sufficient, reported that "exercise and tranquilizers help," and denied any recent depression.  *Id.*  Importantly, plaintiff's fiancé reported he was "doing 'awesome,'" was a "different person," and was "more calm." *Id.*  Finally, Dr. Faison's notes from December 7, 2015, indicate that plaintiff's anxiety was "improving on buspirone" and increased exercise and therapy.  Tr. 569-70.

Thus, there is substantial evidence in the record to support the ALJ's conclusion that "the record does not establish a worsening of [plaintiff's] condition since the prior evaluation" or "document the panic [plaintiff] described to Dr. McCabe."  Tr. 654.  As detailed extensively above, plaintiff's anxiety was "well controlled," Tr. 574, and had even improved through exercise and medication.  In fact, right before Dr. McCabe's December 2015 evaluation, plaintiff was described as "doing 'awesome'" and a "different person."  Tr. 571.  The ALJ provided specific and legitimate reasons, supported by substantial evidence, to discount Dr. McCabe's opinion.

C.    **Dr. Christopher Faison, M.D.**

On June 10, 2019, Dr. Faison completed a two-page medical report where he observed that plaintiff would have to lie down for five to six hours a day due to abdominal pain and miss four or more days of work per month.  Tr. 878-79.  The ALJ discounted Dr. Faison's opinion because:

> Dr. Faison did not provide sufficient explanation or support for the limitations he assessed, and as noted above, his treatment records do not document findings or observations that would support them. He repeatedly noted the claimant to present with normal mood and affect. There is no support for the limitation regarding absences, which appears to be based on the claimant's subjective reports. This opinion is not consistent with the doctor's treatment records or with other evidence, such as the modest mental status examination findings noted by Dr. McCabe.

Tr. 655; *see also* Tr. 650 ("The records do not corroborate the degree of anxiety and panic alleged by the claimant."). Indeed, plaintiff's gastrointestinal issues had largely resolved by the time Dr. Faison wrote his report. Moreover, Dr. Faison's brief report contains no explanation for why plaintiff would require so many absences per month, other than the general statement that plaintiff was "easily overwhelmed/panic even with a work responsibility." Tr. 879.

As noted above, Dr. Faison's treatment records through December 2015 show that plaintiff's anxiety was "well controlled" and had even improved through medication and exercise. Plaintiff next saw Dr. Faison on January 19, 2016, when the doctor noted that plaintiff's anxiety was improved on buspirone. Tr. 633. On February 11, 2016, Dr. Faison started plaintiff on Trazedone for sleep. Tr. 629. Plaintiff had taken Trazedone in the past and reported it had worked well. *Id.* At plaintiff's next visit with Dr. Faison on February 16, 2016, he reported that the Trazedone was helpful in improving his sleep. Tr. 627. Plaintiff also reported "the most successful thing he has found to alleviate his anxiety is exercise." *Id.* Dr. Faison recommended "maintenance," given the recent success with Trazedone for sleep and "exercise for anxiety—kept at a baseline level with Benzodiazepines." *Id.* On February 25, 2016, plaintiff asked to increase his prescription of Trazedone because the prior week had been stressful and he was not sleeping again. Tr. 623. The chart note, however, indicates, "He is doing well in other respects," *id.*, and plaintiff did not appear anxious and had appropriate mood and affect. Tr. 624.

On March 15, 2016, plaintiff reported he was sleeping well, although he had a difficult month because his grandfather had passed away. Tr. 621. Dr. Faison noted generally that plaintiff's anxiety had improved with buspirone and exercise. *Id.* On April 15, 2016, Dr. Faison saw plaintiff for a medication renewal, and no changes were made. Tr. 616. A chart note from June 24, 2016, indicates that plaintiff was "doing well on buspirone, continue." Tr. 1375. Records from plaintiff's August 9, 2016 visit with Dr. Faison show "normal mood and affect." Tr. 1380.

On August 23, 2016, plaintiff reported he was afraid of the result of his ultrasound and had a panic attack. Tr. 1383. However, Dr. Faison again observed "normal mood and affect." Tr. 1384. Dr. Faison also reported plaintiff had "normal mood and affect" on September 15, 2016. Tr. 1386.

On September 26, 2016, plaintiff complained of nausea and vomiting. Tr. 1387. He had gained back 85 pounds. *Id.* It was further noted, however: "His behavior is normal. Judgment and thought content normal. His mood appears anxious." Tr. 1390. An EGD was scheduled for September 29, 2016, and chart notes indicate: "He has more anxiety than usual. He is worried about and frightened by the upcoming EGD." Tr. 1394. Plaintiff was "worried what they could find." Tr. 1393. Test results showed "minimal chronic gastritis," "no evidence of abnormal inflammation, dysplasia or malignancy," Tr. 1416, and nothing "grossly abnormal." Tr. 1422.

On October 28, 2016, plaintiff presented with "normal mood and effect," Tr. 1422, and it was recommended that he exercise. Tr. 1419. Chart notes from November 28, 2016, indicate that plaintiff's gastric pain "has been improving." Tr. 1423. Plaintiff presented with "normal mood and affect." Tr. 1424. His clonazepam was switched to a lower dose of diazepam, with the notation: "will continue to taper benzo meds as able once nausea resolving." Tr. 1422. On

December 30, 2016, plaintiff agains presented with "normal mood and affect," Tr. 1426, and his gastric issues showed "slow healing and improvement." Tr. 1425.

On February 24, 2017, plaintiff presented with "normal mood and affect." Tr. 1429. Plaintiff saw Dr. Faison on August 1, 2017, for refills of Diazepam, Adderall, and Lorazepam. Tr. 1433. He "states he has no other issues" and "his stomach is feeling much better, better each day." *Id.*

Plaintiff did not return to Dr. Faison until May 4, 2018. He had moved out of the area, lost his medications, did not have refills, and did not have insurance. Tr. 1435. Dr. Faison noted "severe anxiety" and continued plaintiff's buspirone. Tr. 1437.

On June 8, 2018, plaintiff reported that his sleeping improved with mirtazapine, and that he "falls asleep at midnight until 8-9 AM." Tr. 1438. Plaintiff was "nervous/anxious" but had "normal mood and affect." *Id.* Plaintiff again presented with "normal and affect" on July 2, 2018. Tr. 1441. Chart notes from December 10, 2018, indicate plaintiff was "not nervous/anxious." Tr. 1442.

Plaintiff saw Dr. Faison again on May 20, 2019, and June 10, 2019, where it was indicated that his father had late stage bladder cancer. Tr. 1446. It was suspected that plaintiff's abdominal pain was related to his "father's end stage illness." Tr. 1447. Plaintiff had a normal GI workup and "tends to be helped by anxiety meds." *Id.* Chart notes from June 17, 2019, indicate "improved insomnia/anxiety on mirtazapine." Tr. 1448. Plaintiff had "normal mood and affect." Tr. 1449.

On August 5, 2019, plaintiff had "recently improved" abdominal pain. Tr. 1450. Plaintiff presented with high anxiety and reported that his panic attacks were more than he could

handle.  Tr. 1453.  He reported that he took medication and went to bed until the panic subsided.
*Id.*

However, on September 23, 2019, plaintiff reported that "he has had a better month and
is eating more."  Tr. 1455.  On November 26, 2019, Dr. Faison observed that plaintiff had
"success" in increased time out of his room, he was taking out the trash, and had decreased fear
around appointments.  Tr. 1457.  Additionally, the gabapentin combined with lorazepam helped
his anxiety.  *Id.*  On December 30, 2019, Dr. Faison observed that although plaintiff's anxiety
was high, it had improved over the past few months.  Tr. 1460.  Plaintiff was still taking
buspirone and gabapentin, which was "helpful."  *Id.*

Based on this evidence, it was reasonable for the ALJ to conclude that Dr. Faison's
treatment records "did not document findings or observations that would support" his opinion as
to plaintiff's limitations.  The records indicate that plaintiff's gastric issues were improving or
largely resolved.  Testing had revealed no grossly abnormal findings, and it was suspected that
plaintiff's gastric issues were related to his anxiety.  However, as the ALJ observed, plaintiff
consistently presented with "normal mood and affect."  Dr. Faison's records also regularly
indicated that plaintiff's anxiety was reduced with medication, which was repeatedly observed to
be helpful.  While plaintiff urges the court to adopt a different interpretation of the record, where
the ALJ's interpretation of Dr. Faison's records was reasonable, it must be upheld.  *Burch*, 400
F.3d at 679.  Therefore, the ALJ did not err in evaluating Dr. Faison's opinion.

## II.    Subjective Symptom Testimony

Plaintiff contends the ALJ erred in rejecting his symptom testimony.  Pl. Br. 11.  When a
claimant has medically documented impairments that could reasonably be expected to produce
some degree of the symptoms complained of, and the record contains no affirmative evidence of

malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see* 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements").

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.  *Id.* at *1-2.  The ALJ must

examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

SSR 16-3p explains that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." The decision under review is dated June 12, 2020. Tr. 657. Therefore, SSR 16-3p applies.

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 647. However, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

Specifically, the ALJ cited to "modest examination findings" by Dr. McCabe, Tr. 649, and observed that records by Dr. Wisler and Dr. Faison "do not corroborate the degree of anxiety and panic alleged by" plaintiff. Tr. 650. Again, "medical evidence is . . . a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857. Here, as discussed extensively above, such a finding is supported by substantial evidence.

Moreover, the ALJ did not reject plaintiff's testimony solely on the basis that it was not corroborated by objective medical evidence. *See Rollins*, 261 F.3d at 857. The ALJ also observed that "[t]he evidence through the date last insured does not support the extent of the symptoms alleged by the claimant; rather, it indicates that he experienced improvement with medications" and that there was "ongoing medication management." Tr. 648; *see* 20 C.F.R. §

416.929(c)(2) (describing "other evidence" to include "[t]he . . . effectiveness . . . of any

medication you have taken to alleviate your pain or other symptoms"); *Lingenfelter v. Astrue*,

504 F.3d 1028, 1040 (9th Cir. 2007) (observing "other factors" to include "whether the claimant

takes medication or undergoes other treatment for the symptoms").  This finding is supported by

substantial evidence; there are numerous references in the record indicating that the medication

plaintiff was taking was effective, as discussed at length above.

Finally, the ALJ observed that plaintiff had not sought counseling even though it had

been recommended:

> The claimant has also reported improvement with medications alone and has not
> sought other treatment despite recommendations to do so; if his condition were
> truly as debilitating as alleged, it would seem that he would desire additional
> treatment.  He testified that he has not gone to counseling because he is scared of
> new things, but has attended numerous medical appointments with different
> providers, had emergency room visits, and been evaluated by a psychiatrist
> without references to overwhelming anxiety or panic.

Tr. 652.  The ALJ relied on Dr. McCabe's December 2015 report in this regard.  Tr. 654.  In that

report, Dr. McCabe observed that plaintiff was "very much invested in his disability" and

criticized plaintiff for not following through on his prior recommendation to engage in

psychotherapy[5]:

> This gentleman is very much invested in his disability. He believes that he is
> unable to work and that he will never be able to work. However, he demonstrates
> a lot of capabilities of being able to adapt to his symptoms. For example, he is
> able to maintain a daily and somewhat rigorous exercise schedule which has led
> to significant improvement in his weight and health overall . . .  Interestingly, he

---

[5] In his 2014 report, Dr. McCabe observed that plaintiff "has never been through any
psychological treatments" and "doesn't see how talk therapy would be helpful for his anxiety
because he feels like he's talked a lot about it with his family."  Tr. 552.  Rather, plaintiff used an
avoidance technique that "his family appears to have encouraged."  *Id.*  Dr. McCabe
recommended both individual and group therapy, and stated that plaintiff would "benefit from
psychological treatment to help him begin testing himself and taking risks and exposing himself
to things that might cause anxiety and dealing with that anxiety."  Tr. 554.  Dr. McCabe opined
that "otherwise I don't believe his symptoms will improve any further."  *Id.*

is taking a combination of benzodiazepines which are tranquilizers in combinations with stimulants. It is hard to know what combination of stimulants and tranquilizers are contributing to his current symptoms; perhaps stimulants are making his anxiety worse. As I indicated two years ago what this gentleman needs is behavioral psychotherapy, he is invested in his strategies of avoidance around panic symptoms and is making no effort to make any psychological strides in terms of exposure to anxiety and learning how to cope with that anxiety instead staying within his panic symptoms, keeping himself isolated and keeping himself regimented to the structure that he has created inside of his bouse. I believe that it is very telling that he was able to get on an airplane and fly to California to meet a woman that he met through a videogame and had no panic symptoms with that effort because he was applying himself. As long as this gentleman is invested in his self-perception that his anxiety rules his life, nothing will change for him and at this point he is very much invested in that idea and is pursuing Social Security Disability which will only further that belief.

Tr. 906.  This was a specific, clear and convincing reason, supported by substantial evidence, to discount plaintiff's testimony. Therefore, there is no error.

## ORDER

The Commissioner's decision is AFFIRMED.

DATED  January 18, 2022.

_____
/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge